[No. 20643.  *En Banc.*  March 22, 1928.]

## THE STATE OF WASHINGTON, *Respondent,* v. CHRISTINE HOPKINS, *Appellant.*[1]

[1] HOMICIDE (78)—EVIDENCE—SUFFICIENCY — COMMISSION OF ACT— IDENTIFICATION.  The intoxication of the driver of a car is sufficiently shown by proof that a man was seen driving the car in a reckless manner until it collided with another, and immediately after, the only man there was an intoxicated man leaning against the car, who rendered no assistance to injured persons and suddenly disappeared and the owner of the car who had been drinking, said she did not know where the driver had gone.

[2] HOMICIDE (6)—MANSLAUGHTER—ELEMENTS OF OFFENSE.  Under Rem. Comp. Stat., § 2007, making every person a principal who directly or indirectly aids, abets, encourages or induces another to commit a felony, the owner of a car is guilty of manslaughter where she permits an intoxicated person to drive, and rides with him until he causes the death of another through reckless driving.

[3] HOMICIDE (5)—MANSLAUGHTER—ELEMENTS OF OFFENSE.  Under Rem. Comp. Stat., §§ 2392-2395, intent to cause the death of another is not an element of the crime of manslaughter.

[4] CRIMINAL LAW (116)—WITNESSES (94)—CHARACTER OF ACCUSED —PARTICULAR ACTS—CROSS-EXAMINATION.  In a prosecution for homicide, where the defendant takes the witness stand, she may properly be examined, for purpose of impeachment of her credibility, as to whether she conducted a house of prostitution. FRENCH and ASKREN, JJ., dissent.

Appeal from a judgment of the superior court for King county, Hawkins, J., entered February 15, 1927, upon a trial and conviction of manslaughter. Affirmed.

*Charles H. Miller,* for appellant.

*Ewing D. Colvin* and *Ethan Allen Peyser,* for respondent.

*John F. Dore, F. C. Reagan,* and *John J. Sullivan, amici curiae.*

[1]Reported in 265 Pac. 481.

PARKER, J.—The defendant, Mrs. Hopkins, was by information filed in the superior court for King county jointly, with one John Doe, charged with the crime of manslaughter. The information charges, in substance, that John Doe, his true name being unknown, by his wilful, reckless and unlawful driving of an automobile on a public highway in King county, caused the death of Lois Ames. Mrs. Hopkins was, by the concluding language of the information, charged with aiding and abetting John Doe in the death of Lois Ames, as follows:

"And she, said Christine Hopkins, being then and there present, and being then and there the owner of said Studebaker automobile and a passenger therein and knowing said John Doe to be intoxicated, wilfully and unlawfully entrusted the operation of said automobile to said John Doe and permitted him to drive the same upon said highway and did then and there wilfully, unlawfully and feloniously aid, encourage, assist, advise, counsel and abet him, the said John Doe, in said unlawful acts as hereinbefore set forth and in the said unlawful operation of said Studebaker automobile aforesaid."

Trial in the superior court sitting with a jury resulted in a verdict of guilty and a judgment thereon being rendered against Mrs. Hopkins, from which she has appealed to this court.

The principal question here presented is as to the sufficiency of the evidence to sustain the verdict and judgment. That question was presented to the trial court by appropriate timely motions which were overruled, and is here presented by appropriate assignments of error. At the time in question, Mrs. Hopkins was proprietor of, and lived at, a small hotel situated in the southerly portion of the main business district of Seattle. She was then, and had been for about three years, the owner of an enclosed Studebaker automobile which she was accustomed and well qualified to

drive. Shortly before ten o'clock of the night in question, her friend ''Jimmie Burns,'' as she called him, came to the hotel to see her. They then agreed to take an automobile ride northerly to a so-called ''chicken dinner'' resort beyond the city limits on the Bothell Highway. It was agreed that they would go in her automobile and that he would drive. Accordingly they proceeded northerly through the city some six or seven miles to a point very near and just inside the northerly city limits.

There is no direct evidence as to what occurred during this portion of their journey, nor is there any direct evidence as to the condition of either of them as to being intoxicated up to that time, other than she admitted to the police officers that she had taken two or three drinks of whiskey earlier in the evening. According to the evidence of a witness, who was driving north on the highway, just before reaching the city limits, the Hopkins' car passed close to the left of the car the witness was driving, going in the same direction. The witness noticed this particularly, because the car passed dangerously close and turned quickly to the right in front of the car of the witness, requiring some care on the part of the witness to avoid a collision at that time. The witness' car was going about twenty miles per hour; the Hopkins' car probably about twenty-five miles per hour. According to this witness and some other witnesses, the Hopkins' car was, upon and after passing that car, driven in a very erratic and apparently reckless manner. It proceeded in this manner so that, in going approximately a distance of two or three blocks farther, it, for the most part, proceeded on its left, the west, side of the somewhat wide pavement, its speed continuing at from twenty-five to thirty miles per hour.

While so proceeding for a distance of about two

blocks to a short distance north of the city limits, it came in collision with the Ames car which was then being driven south on its right, the west, side of the pavement. When the driver of the Ames' car saw the approach of the Hopkins' car on its wrong side of the pavement, he checked his speed, which had previously been about twenty-five miles per hour, and finally seeing that he would have a head-on collision with the Hopkins' car, as it was proceeding on his side of the pavement, and there being a bank on that side preventing his turning off the pavement, to avoid the impending collision, if possible, he turned his car east to his left. The driver of the Hopkins' car, an instant later, turned his car east to its right, and struck the right side of the Ames' car back of the front wheel, forcing the Ames' car to the east side of the pavement and in some manner causing Mrs. Ames and her daughter Lois Ames to fall from their car to the pavement and come to rest partly under the Hopkins' car which was a much heavier car than the Ames' car. From the injuries so received Lois Ames died a few hours later.

There is practically no room for controversy over the facts we have thus far summarized. We think they leave no room for seriously arguing that they are not sufficient to warrant the jury in believing beyond a reasonable doubt that John Doe (Jimmie Burns), the driver of the Hopkins' car, was guilty of such reckless and unlawful acts on his part causing the death of Lois Ames as to make him guilty of manslaughter. This, of course, is but a part of our problem here.

[1] We now notice facts, as the jury were warranted in believing them to exist, touching more particularly Mrs. Hopkins' relation to the reckless and unlawful acts of Jimmie Burns resulting in the death of Lois Ames. Jimmie Burns, as Mrs. Hopkins called

the driver of her car, disappeared from the scene of the collision very soon after its occurrence, while others present were intent on and busily engaged in extricating Mrs. Ames and Lois Ames from the wreck. He has not been seen since then, hence the trial of Mrs. Hopkins alone. Mrs. Hopkins had been acquainted with Jimmie Burns some two or three months only. She did not know what his business or vocation was, or where he lived, only that he had come to her hotel occasionally. Mrs. Hopkins being pressed by the police for information as to who he was and where he could be found, one witness, an officer, testified to her then statements in part as follows:

"I said 'Where does he work?' 'Well,' she says, 'he don't work; he is just a rounder.' "

Mrs. Hopkins sat in her car for some time immediately following the collision. One witness testified to talking to her there as follows:

"I informed her that she had been in a very bad wreck and had probably killed my little girl. Q. What did she say then? A. Well, she said—for a minute she didn't say anything, and then she said, 'I told him that he could not drive.' "

The jury could well believe from the evidence that Mrs. Hopkins was considerably under the influence of intoxicating liquor, though she apparently knew what she was doing and was conscious of her surroundings. That was apparently about an hour after she had the drinks of whiskey, as admitted by her.

As to the intoxication of the driver of Mrs. Hopkins' car, we have the testimony of a witness as to what he saw very soon after the collision, as follows:

"Q. Now, may I ask if, before you left, you saw any one else standing there? A. There was a man standing alongside of the car there. Q. Which car did you see him standing alongside? A. The Studebaker. Q.

Which side was he standing on? A. He was standing on the right hand side of that car. Q. Did you have an opportunity to ascertain whether he was intoxicated or not? A. Yes, he was. Q. What was his posture or position? A. Just standing leaning against the car like that (indicating). Q. Did he render any assistance while you were lifting the car? A. None. Q. Did Mrs. Hopkins? A. None. Q. While you were there did Mrs. Hopkins get out of the Studebaker? A. Yes, she did after I came back, after I called the ambulance. Q. Where did she go to when she got out? A. In another lady's car; Mrs. Atkinson's car. Q. You say then you had some conversation with her? A. Yes. Q. Relate just exactly what was said. A. I went over to the car and I asked her what became of the driver, and she said she didn't know. I asked her who he was. She said 'Jimmie Burns.' I said, 'Where did he go to?' She said 'I don't know.' "

This witness judged of the man's intoxication by his actions and the strong smell of liquor on his breath. No witness actually saw a man sitting as a driver or otherwise in the Hopkins' car. While the identity of the drunk man leaning against the Hopkins' car as the driver of that car is not testified to directly, we have the additional circumstance of his sudden disappearance in the darkness and confusion.

We think, under all the circumstances shown, that the jury might well conclude that the intoxicated man leaning against Mrs. Hopkins' car, while she was sitting therein, very soon after the collision, was the driver of that car; that his intoxicated condition was such that he was unfit to drive a car; that it was not of sudden acquiring; that in time it extended back at least over the period of the approximately one half hour elapsing from the time that Mrs. Hopkins placed her car in his charge upon leaving her hotel; and that his intoxication was, or should have been, known to Mrs. Hopkins had she used due care in deciding

whether or not she would entrust the driving of her car to him. Our opinion is that the evidence is sufficient to sustain the verdict and judgment.

[2, 3]   It is contended in behalf of Mrs. Hopkins that the information does not state facts constituting the crime of manslaughter as against her. This, as we understand her counsel, is rested upon the theory that manslaughter is a crime of such nature as to preclude the possibility of there being an accessory before the fact to such crime. There does seem to be language of that purport in the decisions of this court in *State v. Robinson,* 12 Wash. 349, 41 Pac. 51, 902, and *State v. McFadden,* 48 Wash. 259, 93 Pac. 414, 14 L. R. A. (N. S.) 1140. However, Judge Hadley, speaking for the court in the latter case, said:

"It is argued that such facts can in no event amount to other than a charge that appellant was an accessory before the fact, whereas the authorities hold that there cannot be such an accessory to the crime of manslaughter. This court so held in *State v. Robinson,* 12 Wash. 349, 41 Pac. 51, 902. Our statute, Bal. Code, § 6782, however, abolishes all distinctions between an accessory before the fact and a principal, and provides that 'all persons concerned in the commission of an offense, whether they directly counsel the act constituting the offense, or counsel, aid and abet in its commission, though not present, shall hereafter be indicted, tried, and punished as principals.' Under the said statute appellant may be, and is, charged here as a principal and not as an accessory."

The information in that case did not in terms charge the defendant as an accessory before the fact, but in substance charged facts which, under the former technical conception of manslaughter, would amount to charging the accused as accessory, in legal effect charging him as principal under § 6782 of Bal. Code, which section is now § 2007 of Remington's Compiled Statutes. The charge there in question was so made

manifestly in compliance with the rule theretofore announced in *State v. Gifford,* 19 Wash. 464, 53 Pac. 709, in substance, that when the prosecution relies wholly upon evidence tending to show that the accused should be held liable as principal because of his acts, which would constitute him an accessory before the fact under the old law, such facts must be charged against him. That rule was further noticed in *State v. Beebe,* 66 Wash. 463, 120 Pac. 122. Manifestly, the charge against Mrs. Hopkins by this information was so made with a view of complying with that rule of criminal pleading. In our new criminal code, ch. 249, § 8, p. 892, Laws of 1909, Rem. Comp. Stat., § 2260, we find the rule of § 6782, Bal. Code, and § 2007, Rem. Comp. Stat., carried still farther away from the old technical conception of the rule of accessories and principals, in any event somewhat more elaborately stated as follows:

"Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not 'be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

It is now the settled law in this state that intent to cause the death of another is not an element in the crime of manslaughter. Remington's Compiled Statutes, §§ 2392, 2393, 2394 and 2395 [P. C. § 8997 *et seq.*]; *State v. Palmer,* 104 Wash. 396, 176 Pac. 547; *State v.*

*Hoyer,* 105 Wash. 160, 177 Pac. 683, and *State v. Sand-vig,* 141 Wash. 542, 251 Pac. 887. This plainly does not mean that intent to do an unlawful or grossly negligent act resulting in the unintentional death of another, is not an element of the crime of man-slaughter. We think these are elements in the crime of manslaughter. So it seems to us that Mrs. Hopkins was by this information charged with negligence, in a criminal sense, in the placing of her car in the charge of John Doe, as driver, while he was intoxicated, she then knowing him to be intoxicated, and in then per-mitting him to drive it in the reckless, unlawful manner that resulted in the death of Lois Ames. So we conclude that the information sufficiently charged her, in contemplation of our law, as principal, though some-what in form charging her as an accessory before the fact.

The following decisions are of interest in our present inquiry and observations therein, we think, lend some support to our conclusions, both as to the sufficiency of the information and as to the sufficiency of the evi-dence to support the verdict and judgment, though we do not cite these cases as being directly in point: *Commonwealth v. Sherman,* 191 Mass. 439, 78 N. E. 98; *Ex parte Liotard,* 47 Nev. 169, 217 Pac. 960; *Story v. United States,* 16 Fed. (2d) 342.

[4] Upon cross-examination of Mrs. Hopkins as a witness, she was asked by the prosecuting attorney: "Q. Mrs. Hopkins, are you, in running the Chicago Hotel, the proprietress of a house of prostitution? . . ." Her counsel's objection to this inquiry being by the court overruled, she answered, "No." This is claimed by her counsel as error to her prejudice. The question being asked upon her cross-examination and manifestly for the purpose of testing her credibility, the inquiry was proper under our repeated decisions.

*Gardner v. Spalt*, 86 Wash. 146, 149 Pac. 647; *State v. Godwin*, 131 Wash. 591, 230 Pac. 831.

Some contentions are made and briefly argued, challenging the rulings of the trial court in refusing to give certain requested instructions and in giving some of its instructions. We have carefully considered these claims of error and deem it sufficient to say that, as here presented, we are unable to see any prejudice to the rights of Mrs. Hopkins in any of these rulings.

The judgment is affirmed.

Main, Mitchell, Tolman, Holcomb, and Fullerton, JJ., concur.

French, J. (dissenting)—In the case of *State v. Robinson*, 12 Wash. 349, 41 Pac. 51, 902, a prosecution under the aiding and abetting statute, this court laid down the rule:

"We think that § 1319 [Code Proc.], *supra*, contains but the usual provisions in force in all, or nearly all, of the states, and we have been cited to no case, nor have we found one in which a conviction for manslaughter has been sustained under circumstances similar to those disclosed by the record here. *The offense of manslaughter from its legal character excludes the possibility* of an accessory before the fact as an element in its composition." (Citing cases).

This rule is inferentially approved in *State v. McFadden*, 48 Wash. 259, 93 Pac. 414, 14 L. R. A. (N. S.) 1140. At the time the rule was announced in the above cases, manslaughter in this state was, generally speaking, manslaughter as defined at common law. But under our criminal code (Rem. Comp. Stat., §§ 2392 to 2395), as since adopted, where there is any intent or design there is now no element of manslaughter. *State v. Palmer*, 104 Wash. 396, 176 Pac. 547; *State v. Hoyer*, 105 Wash. 160, 177 Pac. 683; *State v. Sow-*

*ders,* 109 Wash. 10, 186 Pac. 260; *State v. Gottstein,* 111 Wash. 600, 191 Pac. 766.

The doctrine announced in the above cases is that the killing of a human being in order to constitute manslaughter must be involuntary and unintentional. I am unable to understand how a person can be aided and abetted in the doing of an unintentional and involuntary act by another person who has no intent.

Our statute (Rem. Comp. Stat., § 2260), on aiding and abetting, set out in the majority opinion, has been construed by this court in *State v. Peasley,* 80 Wash. 99, 141 Pac. 316, where, after setting out the statute in full, the court said:

"Each of the words used in this statute upon which a criminal charge can be predicated signifies some form of overt act; the doing or saying of something either directly or indirectly that contributes to the criminal act; some form of demonstration that expresses affirmative action; and not mere approval or acquiescence, which is all that is implied in assent. To assent to an act implies neither contribution nor an expressed concurrence. It is merely a mental attitude which, however culpable from a moral standpoint, does not constitute a crime, since the law cannot reach opinion or sentiment however harmonious it may be with a criminal act. *State v. Douglass,* 44 Kan. 618, 26 Pac. 476; *White v. People,* 81 Ill. 333; *Plummer v. Commonwealth,* 1 Bush (Ky.) 76; *State v. Cox,* 65 Mo. 29; *True v. Commonwealth,* 90 Ky. 651, 14 S. W. 684; *Clem v. State,* 33 Ind. 418."

The acts of negligence set out in the information and charged against the principal, John Doe, are: First, that he was operating an automobile while intoxicated; second, at an unlawful rate of speed; and third, that he failed to pass to the right of an approaching car.

The only evidence found in the record to sustain the charge of drunkenness against John Doe, the driver of the car, is the following:

"Q. Now, may I ask, if before you left you saw any-one else standing there? A. There was a man standing alongside of the car there. Q. Which car did you see him standing alongside? A. The Studebaker. Q. Which side was he standing on? A. He was standing on the right hand side of that car. Q. Did you have an opportunity to ascertain whether he was intoxicated or not? A. Yes, he was. Q. What was his posture or position? A. Just standing leaning against the car like that (indicating). Q. Did he render any assist-ance while you were lifting the car? A. None."

There is no evidence in the record to show that this man who was drunk and who stood by the side of the Studebaker car after the collision was John Doe, the driver, nor is there any testimony whatever to show what, if any, connection he may have had with this accident; and there is certainly no presumption against appellant, rather all presumptions are in her favor. The only testimony in the case relative to the unlawful speed is the testimony of a state's witness who esti-mated the speed of the car for a distance of about two blocks prior to the time of the accident at about twenty or twenty-five miles an hour, the testimony being: "You say that the car was going about twenty or twenty-five miles an hour? A. Not to exceed that." The lawful rate of speed of a car at the place of this accident was thirty miles an hour. This testimony was given by a witness who followed the car which caused the accident, who testified that she was watching her own speedometer and was therefore in position to give correct testimony as to speed. Five or more of the state's witnesses, all who were asked concerning the subject, testified that the appellant, Christine Hopkins, was drunk at the time the accident happened. There is no testimony that she did or said anything concern-ing the way the car was being operated or driven, and I can conceive of no legal obligation resting upon her

except that of remaining silent and quiescent, she being in the condition which all of the state's witnesses testified she was in.

I feel constrained to dissent from the majority opinion on two grounds: First, that the crime of manslaughter is such a crime that, from its very nature, one cannot aid and abet in the commission thereof; second, that there is not a scintilla of evidence in the record showing any overt act on the part of the appellant.

ASKREN, J., concurs with FRENCH, J.