[No. 28269. *En Banc.* May 17, 1941.]

THE STATE OF WASHINGTON, *Appellant,* v.
GILBERT HEDGES, *Respondent.*[1]

[1]Reported in 113 P. (2d) 530.

*Stanley J. Krause* and *Paul O. Manley,* for appellant.

*C. D. Cunningham,* for respondent.

BEALS, J.—The defendant, Gilbert Hedges, was, by information filed in the superior court for Grays Harbor county, charged with the crime of manslaughter. A demurrer to the information was overruled, whereupon defendant entered a plea of not guilty. The jury brought in a verdict of guilty as charged, whereupon defendant filed a motion in arrest of judgment and an alternative motion for a new trial. After considerable argument, the trial court granted defendant's motion for arrest of judgment, and entered an order to that effect. Through some oversight, the court made no ruling upon defendant's motion for a new trial. From the order sustaining defendant's motion for arrest of judgment and directing his discharge from custody, the state has appealed.

The entry of the order above referred to is assigned as error.

At the close of the evidence, appellant moved for leave to file an amended information, which motion the court granted. Respondent demurred to this amended information, his demurrer having been by the court overruled. Respondent then pleaded not guilty, where-

upon the case was submitted to the jury, as above narrated.

The charging portion of the amended information, which differs only slightly from the original information, reads as follows:

"That he, the said defendant, Gilbert Hedges, in the county of Grays Harbor, state of Washington, on or about the 10th day of October, 1939, then and there being, did then and there wilfully, unlawfully and feloniously, while hunting game, and without using ordinary caution in that the defendant knew or should have known that other human beings were in his close vicinity, and without keeping a proper lookout for other human beings, shoot a 45-90 caliber Winchester rifle so that the bullet shot from said rifle went into the body of George Ogren, a human being, thereby inflicting a mortal wound in the body of the said George Ogren, from which mortal wound the said George Ogren then and there died, and that the killing of said George Ogren as aforesaid was neither excusable nor justifiable."

There is little dispute in the evidence, and no dispute concerning the following facts: During the month of October, 1939, respondent, having procured a hunting license and a "deer tag," together with his friends, the brothers George and John Ogrin, went on a hunting trip in Grays Harbor county. Tuesday, October 10th, found the three friends hunting deer in rough country, George Ogrin, who was the oldest and most experienced hunter of the three, advising concerning the details of the hunt. About half an hour before the firing of the fatal shot, the three men met to plan their campaign, deciding to separate, each to follow a designated course, in order to cover a nearby ridge. It was agreed that George Ogrin should proceed down the crest of the ridge, with his brother John on his right and respondent to his left. The three men

had agreed that care should be taken to avoid shooting in the direction of any member of the party.

During the course of the hunt down the ridge, and about five o'clock in the afternoon, while it was still daylight, respondent fired a shot, which struck George Ogrin in the head, killing him. The shot was fired at a point less than two hundred feet (probably less than one hundred fifty feet) distant from where Ogrin was standing, the latter wearing his red hat and red hunting shirt. It is not contended that the men were hunting in a forbidden area, or without the hunting season. It clearly appears that the men were warm friends.

As to testimony not admitted by all parties to be true, respondent stated that, before he fired the shot, he saw the antlers and then the neck of a deer. On the other hand, expert woodsmen who examined the location where a deer was supposed to have been testified that they found no deer tracks in that vicinity. There were trees and underbrush preventing clear observation, but evidence was introduced to the effect that a narrow opening therein would have permitted a view of a man standing or moving where Mr. Ogrin's body was found.

Two questions are presented on this appeal: First, whether one charged with manslaughter can be convicted under an information charging that the death of a human being has been caused by the failure on the part of the accused to use ordinary caution in the performance of some lawful act, by lawful means, and without unlawful intent; and second, whether the record contains sufficient evidence to support a finding by the jury that respondent, in his conduct, was guilty, beyond a reasonable doubt, of the failure to use ordinary caution in firing the shot which caused the death of George Ogrin.

Rem. Rev. Stat., § 2390 [P. C. § 8995], defines homicide as follows:

"Homicide is the killing of a human being by the act, procurement or omission of another and is either (1) murder, (2) manslaughter, (3) excusable homicide or (4) justifiable homicide."

Sections 2392, 2393, and 2394 [P. C. §§ 8997, 8998, 8999] define respectively, murder in the first and second degrees and a killing in the course of fighting a duel.

Section 2395 [P. C. § 9000] defines manslaughter as follows:

"In any case other than those specified in sections 2392, 2393 and 2394, homicide, not being excusable or justifiable, is manslaughter."

This definition is exclusive, the statute not affirmatively defining the crime of manslaughter, that offense comprising all homicides not falling within the definitions of murder in the first or second degree, and, on the other hand, such homicides as are not excusable or justifiable. In this case, it is conceded that justification is not an issue.

Excusable homicide is defined by Rem. Rev. Stat., § 2404 [P. C. § 9009], as follows:

"Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent."

Under this section, in plain and unambiguous language, it is provided that, before a homicide can be held excusable, four elements must be present: First, the homicide must have been committed by accident or misfortune; second, it must have occurred in the doing of a lawful act, by lawful means; third, ordinary caution must have been observed by the person responsible for the killing; and fourth, this person must have acted without any unlawful intent. If any one of these four elements be eliminated from the factual

situation, the homicide is not within the statutory definition.

It appears from the order granting respondent's motion in arrest of judgment that the trial court was of the opinion that the amended information failed to charge a crime, and that the motion for a dismissal, which respondent made at the close of the state's case, and respondent's motion for a directed verdict of acquittal made at the close of all the evidence, should have been sustained, for the reasons that the information charged no crime, and even if it did, the state had failed to introduce any evidence tending to prove the crime charged.

Respondent argues, in effect, that the phrase "with ordinary caution," as contained in § 2404, *supra,* should be considered as though it read *with slight caution;* that failure to exercise ordinary caution amounts to ordinary negligence, while the failure to exercise slight caution amounts to gross negligence. The difference between ordinary negligence and gross negligence is one of degree only. Under the terms of § 2404, giving the words their ordinary meaning, the exercise of ordinary caution and the presence of other elements of the statute, with the absence of unlawful intent, equal excusable homicide; while the absence of ordinary caution, or, affirmatively speaking, the presence of ordinary negligence, plus death, equal manslaughter. Respondent's argument is based on the theory that nothing less than gross negligence plus death equal manslaughter.

In support of his argument, respondent cites several decisions of this court. In the case of *State v. Palmer,* 104 Wash. 396, 176 Pac. 547, the defendant was charged with the crime of murder in the first degree, the jury having returned a verdict of guilty of murder in the second degree. The defendant had introduced evidence

tending to prove that the killing was in self-defense. On appeal, the defendant contended that the trial court should have instructed the jury upon the crime of manslaughter, and that the jury should have been permitted to find the defendant guilty of that offense. In the course of the opinion, the crime of manslaughter was referred to as comprising "those undesigned killings committed in the commission of some unlawful act which are not excusable or justifiable." In the case cited, it was held that the facts did not warrant an instruction on the crime of manslaughter, and the judgment was affirmed. The reference to the crime of manslaughter above quoted was general in its nature, and was not intended to be exact or complete. The language used must be considered in connection with the question before the court. It was nowise necessary, in order to determine the question before the court, that the crime of manslaughter of the character now before us be defined or in anywise considered. The defendant relied upon self-defense, admitting that he had shot with the design to kill, claiming, of course, that his act was justified. No question as to excusable homicide or negligent conduct was raised. The evidence disclosed no facts which would justify a verdict of manslaughter of any kind under our statute. The court observed that the statutes of this state have departed from the common law definition of manslaughter, and continued:

"The makers of our criminal code having steeled themselves against the feeling of tenderness for the fraility of human nature, no longer palliate the offense, and all killings not excusable or justifiable, done with a design to effect death, constitute murder in one of its degrees. Whether this was a wise and salutary step away from the long established and well understood classification at common law is not for us to inquire. It is an expression of the legislative will upon this sub-

ject, and the remedy for the defect, if it be a defect, exists with the legislature and not with the court."

In the case of *State v. Hoyer,* 105 Wash. 160, 177 Pac. 683, an appeal from a judgment of guilty of murder in the first degree, it was contended that the trial court had erred in instructing the jury that the voluntary killing of another upon sudden heat would, if unjustified, constitute the crime of murder in the second degree, the appellant contending that such a killing might constitute manslaughter. The court referred to its opinion in the case of *State v. Palmer, supra,* and held that the trial court had not committed error. In the case last cited, the appellant had sought to justify the homicide upon the ground that it was committed in self-defense. Neither the *Palmer* nor *Hoyer* case is in point here, because the homicides were intentional, no question of accident appearing.

In the case of *State v. Sandvig,* 141 Wash. 542, 251 Pac. 887, the defendant appealed from a trial and conviction of the crime of manslaughter. The defendant was charged with driving a motor vehicle while intoxicated, the information alleging that he had operated the vehicle at a grossly excessive rate of speed, and in a wanton and negligent and reckless manner, with the result that he ran into one August Bohm, causing the latter's death. In the course of the opinion, the court said:

"It is not necessary that there should be any criminal intent to constitute manslaughter, since our criminal code has abolished voluntary manslaughter,"

citing the cases of *State v. Palmer, supra,* and *State v. Hoyer, supra.* In the *Sandvig* case, the court was not called upon to consider the precise questions presented in the case at bar. The defendant contended that the evidence showed only an unavoidable accident, and the court observed that there was ample evidence of

negligence to take the case to the jury. Section 2404, *supra*, was not considered by the court in connection with any question presented on the appeal. The judgment of guilty was reversed, but for reasons not pertinent here.

Respondent calls attention to the fact that the information upon which Sandvig was tried charged him with gross negligence and wanton recklessness. The fact that the information used this language is entirely unimportant in considering the question presented in the case at bar.

This court, in the case of *State v. Hopkins,* 147 Wash. 198, 265 Pac. 481, 59 A. L. R. 688, affirmed a conviction of the crime of manslaughter. It appeared that the defendant Christine Hopkins was charged with the crime jointly with one John Doe, the latter having been charged with recklessly and unlawfully driving an automobile, and while so engaged having caused the death of a human being. The defendant Hopkins was charged with aiding and abetting John Doe, the information as to her using the following language:

" 'And she, said Christine Hopkins, being then and there present, and being then and there the owner of said Studebaker automobile and a passenger therein and knowing said John Doe to be intoxicated, wilfully and unlawfully entrusted the operation of said automobile to said John Doe and permitted him to drive the same upon said highway and did then and there wilfully, unlawfully and feloniously aid, encourage, assist, advise, counsel and abet him, the said John Doe, in said unlawful acts as hereinbefore set forth and in the said unlawful operation of said Studebaker automobile aforesaid.' "

The defendant "John Doe" was not apprehended, and Christine Hopkins alone was tried and convicted. The case was heard by this court sitting *En Banc,* and in an exhaustive opinion the facts are stated in considerable detail. On appeal, Mrs. Hopkins contended

that the information as to her failed to state facts sufficient to constitute the crime of manslaughter, her counsel contending that the crime of manslaughter is of such a nature as to preclude the possibility of there being an accessory before the fact. The court reaffirmed the rule that "it is now the settled law in this state that intent to cause the death of another is not an element in the crime of manslaughter," continuing:

> "*This plainly does not mean that intent to do an unlawful or grossly negligent act resulting in the unintentional death of another, is not an element of the crime of manslaughter. We think these are elements in the crime of manslaughter.* So it seems to us that Mrs. Hopkins was by this information charged with negligence, in a criminal sense, in the placing of her car in the charge of John Doe, as driver, while he was intoxicated, she then knowing him to be intoxicated, and in then permitting him to drive it in the reckless, unlawful manner that resulted in the death of Lois Ames. So we conclude that the information sufficiently charged her, in contemplation of our law, as principal, though somewhat in form charging her as an accessory before the fact." (Italics ours.)

Respondent argues that, by the use of the words which we have italicized, this court expressed the view that the negligence sufficient to support a charge and conviction of manslaughter must be gross negligence, if the homicide was not committed in the course of some intended unlawful act. The acts of Christine Hopkins, as disclosed in the opinion, were certainly acts of gross negligence. The opinion is not authority for the proposition that a conviction for manslaughter may not be based upon acts which a jury might believe constituted ordinary negligence, rather than gross negligence.

In discussing the *Hopkins* case, respondent cites authorities from other states, in which the distinction between the meaning and effect of the word *negligence*, as used in civil cases, is distinguished from the use of

that word in criminal prosecutions. Opinions are cited in which courts have said that negligence, to become criminal, must be reckless or wanton. Those decisions are not controlling here, as manslaughter, under our statute, is a different crime from the crime of the same name in other jurisdictions.

Two of our later cases also require discussion. In the case of *State v. Turpin*, 158 Wash. 103, 290 Pac. 824, the defendant was charged with manslaughter, the conviction being affirmed on appeal. It appeared that the defendant, in company with two of his friends, met a Chinese. Shortly after the meeting, the defendant struck the Chinese a heavy blow, as the result of which he died. The defendant admitted striking the blow, claiming that his act was justified. While the homicide was admitted, as the defendant was not charged with murder, the burden did not rest upon him to reduce the degree of the offense to manslaughter. The court, after discussing Rem. Rev. Stat., § 2406, declaring when in certain cases homicide is justifiable, quoted § 2404, *supra*. We stated that the sole question which the jury was called upon to determine was whether or not the defendant was justified in striking the blow which he admitted he struck. In the course of the opinion, we said:

"The trial court correctly charged the jury that manslaughter is the unintentional killing of a human being, done, without excuse or justification, by a person while engaged in the commission of an unlawful act not amounting to a felony, or in doing a lawful act in a grossly negligent manner that, in order to constitute manslaughter, it is not necessary that there be either premeditation or an intent to kill. The court instructed the jury as to what constitutes excusable homicide, according to the definition of § 2404, *supra*. It also instructed them as to what constitutes justifiable homicide as defined in §§ 2406 and 2416, *supra*."

As this court was of the opinion, as above stated, that the sole question before the jury was whether or not appellant was justified in striking the deceased, it was not necessary that the degree of negligence, as applied to the defendant's conduct, be considered. It is also evident the trial court, in using the words "grossly negligent," in connection with § 2404, placed a greater burden upon the state than that section required, and erred in the defendant's favor, of which error the defendant on appeal could take no advantage. The use by this court of the language above quoted, considered in the light of the entire opinion, does not constitute a holding that § 2404 places upon the prosecution in such a case as this the burden of proving that the defendant was guilty of gross negligence.

In the recent case of *State v. Karsunky,* 197 Wash. 87, 84 P. (2d) 390, the defendant was charged with the crime of manslaughter, and also with the offense of practicing medicine without a license. The case was tried to the court sitting without a jury, and resulted in the conviction of the defendant upon both counts. This court held that defendant could not waive a jury trial, and reversed the judgment of conviction. In discussing the facts, this court referred to the defendant's conduct as grossly negligent, that statement being amply warranted by the record. In the case cited, the facts showed that the defendant had assumed to treat a person suffering from diabetes, and the language used by this court in characterizing the defendant's conduct has no application to such a case as is disclosed by the facts in the case at bar.

In the case of *Clements v. State,* 176 Wis. 289, 185 N. W. 209, 21 A. L. R. 1490, the defendant appealed from conviction of the crime of manslaughter in the fourth degree. It appeared that the defendant was driving an automobile which collided with a truck, the

collision resulting in the death of one who had been riding in the latter vehicle. The trial court had instructed the jury that they could determine whether or not the defendant's act which resulted in the homicide " 'was a lawful act, and, if it was lawful, whether it was done with usual and ordinary caution,' " also instructing the jury that, if the defendant was not violating the statute to which reference was made, but was not driving with usual and ordinary caution in other respects, and such want of care caused the death, the homicide was not excusable. The court quoted the following statutes of Wisconsin concerning the crime of manslaughter:

Section 4365: "The killing of a human being by the act, procurement or omission of another in cases where such killing shall not be murder according to the provisions of this chapter is either justifiable or excusable homicide or manslaughter."

Section 4363: "Every other killing of a human being by the act, procurement or culpable negligence of another, where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree."

Section 4367: "Such homicide is excusable when committed by accident and misfortune in lawfully correcting a child or servant, or in doing any other lawful act by lawful means with usual and ordinary caution and without any unlawful intent."

These statutes are very like those of this state applicable to the case at bar. The defendant argued that the degree of negligence contemplated by the Wisconsin statutes referring to the crime of manslaughter in the fourth degree was not ordinary negligence, but gross negligence. Concerning this matter, the court said:

"It therefore becomes evident that, in accordance with the views expressed by the trial court in its in-

structions, the failure to exercise ordinary care, if death results therefrom, warrants a conviction for manslaughter in the fourth degree. On the contrary, it was strenuously argued by counsel for plaintiff in error, both on the oral argument and in their brief, that the degree of negligence contemplated by the provisions of the statutes on manslaughter in the fourth degree is not ordinary negligence but gross negligence. It may further be said that the evidence in this case, if it discloses negligence at all, refers to only such negligence as the plaintiff in error was guilty of in violating the provisions above set forth pertaining to the operation of automobiles upon the public highways of this state."

The court carefully considered the question, stated its definition of ordinary negligence, and quoted from one of its former decisions a definition of gross negligence. The court stated that the matter resolved itself into a determination as to whether or not the killing was excusable homicide, saying:

"There is, therefore, then presented to us for determination the question whether or not the act was committed with usual and ordinary caution. As already stated, the elements of usual and ordinary caution in the performance of an act are essential constituents involved in the definition of ordinary care, and under such definition the failure to perform such lawful act with usual and ordinary care as the great mass of mankind exercises under the same or similar circumstances constitutes negligence.

"The fourth-degree manslaughter statute applicable to this case embraces in its provision every killing of a human being by the act, procurement, or culpable negligence of another where such killing is not justifiable or excusable or is not declared to be murder or manslaughter of some other degree. A correct interpretation of this statute, therefore, involves primarily the intention of the legislature in the use of the word 'culpable' negligence therein, it being contended by counsel for the plaintiff in error that such term necessarily implies gross negligence as above defined, while counsel for the state insist that such term as so used in

this statute implies and means nothing further than ordinary negligence as herein defined."

After careful consideration, the judgment of the trial court was affirmed. The court, however, took occasion to state that the legislature might well amend the statute, by requiring a finding of gross negligence before an accused could be convicted of manslaughter in the fourth degree. It may also be noted in passing that the legislature of Wisconsin thereafter amended the statute in accordance with the court's suggestion. *State v. Whatley,* 210 Wis. 157, 245 N. W. 93, 99 A. L. R. 749; *Bussard v. State,* 233 Wis. 11, 288 N. W. 187.

Apparently statutes like that of this state under which respondent was convicted, are rare. We find few authorities in point upon the question now under discussion.

■ After careful consideration, we are convinced that the statute referred to does not require a finding by the jury that the accused was guilty of gross negligence, before a conviction may be had. Under this statute, a finding that an accused was guilty of ordinary negligence supports a conviction. If it be desirable that the law be amended by requiring a finding of gross negligence, that matter is within the province of the legislature.

■ The second question on this appeal is presented by respondent's contention, with which the trial court agreed, that the record contains no evidence tending to prove the crime charged. The exercise of "ordinary caution," due care, reasonable care, or however the idea be expressed, depends largely upon the particular circumstances in a given case. The standard of care varies according to the particular act being performed. What would amount to ordinary caution in the use of one instrumentality might be extraordinary carelessness in the use of another. Beyond question, a hunt-

ing rifle is a dangerous instrumentality. Upon the record before us, the jury might have brought in a verdict of acquittal, and we are convinced that the verdict of guilty which the jury returned finds adequate support in the evidence. The trial court erred in ruling that respondent's motion for directed verdict of acquittal should have been sustained.

In connection with the questions here presented, it may be observed that Rem. Rev. Stat., § 2414 [P. C. § 8759], defining assault in the second degree, reads in part as follows:

"Every person who, under circumstances not amounting to assault in the first degree— . . .

"(7) While hunting any game or other animals or birds, shall shoot another;

"Shall be guilty of assault in the second degree and be punished by imprisonment in the state penitentiary for not more than ten years or by a fine of not more than one thousand dollars, or by both."

It is interesting to note that all the other offenses defined as assault in the second degree in the section quoted include the element of intent or wilful assault.

Rem. Rev. Stat., Vol. 7A, § 6360-120 [P. C. § 2696-878], reads as follows:

"When the death of any person shall ensue within one year as a proximate result of injury received by the operation of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

"Any person convicted of negligent homicide by means of a motor vehicle shall be punished by imprisonment in the state penitentiary for not more than twenty (20) years, or by imprisonment in the county jail for not more than one (1) year, or by a fine of not

more than one thousand ($1,000) dollars, or by both fine and imprisonment."

By this section, the punishment to be imposed upon conviction is the same as that provided by § 2395, defining the crime of manslaughter.

In the case of *State v. Dickert*, 194 Wash. 629, 79 P. (2d) 328, this court affirmed a conviction of the crime of negligent homicide, under the section last quoted, holding that Rem. Rev. Stat., Vol. 7A, § 6360-118 [P. C. § 2696-876], defining reckless driving, should not be considered in connection with the trial of one charged under § 6360-120, and that an information charging a violation of the latter section in the words of the statute was sufficient.

The section last quoted is contained in chapter 189, Laws of 1937, p. 911, and is therefore a recent expression of the legislative intent concerning the degree of negligence which, when resulting in death, should constitute an offense deserving the same punishment which follows a conviction of the crime of manslaughter.

In the recent case of *People v. Pociask*, 14 Cal. (2d) 679, 96 P. (2d) 788, the supreme court of California affirmed a conviction of negligent homicide which had previously been affirmed by the court of appeals (91 P. (2d) 199). The supreme court referred to the statutory definition of criminal negligence which is found in § 7, subd. 2, of the California Penal Code, in the following language:

" 'The words "neglect", "negligence", "negligent" and "negligently" import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns,' "

and after discussing several earlier decisions by California courts, said:

"This court expressly disapproved the use of the words 'wanton' and 'reckless', and indicated the inaptitude of the word 'culpable', in describing the idea to be conveyed by the phrase, 'without due caution and circumspection' used in the statute."

The court then quoted from the case of *People v. Wilson,* 193 Cal. 512, 226 Pac. 5, 7, in part as follows:

" 'That when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life.' "

The court called attention to the difference between a prosecution based upon homicide resulting from the negligent driving of a motor vehicle, and other prosecutions for homicide, and we are aware of these differences. It appears that the case had been submitted to the jury before the trial court upon the theory that the defendant was guilty of negligent homicide committed in the doing of a lawful act, to-wit, driving an automobile, in a negligent manner. The trial court instructed the jury that a verdict of guilty might be returned, if the jury should find that the defendant was guilty of negligence resulting from a failure to exercise ordinary care, under all of the facts and circumstances.

Under ordinary circumstances, we would probably have remanded this case to the trial court for a ruling upon respondent's motion for a new trial before reviewing the order arresting judgment, but this being a criminal case, we concluded to decide the question presented on the appeal before remanding the case for further proceedings. Our action is not to be considered as a precedent.

The order granting respondent's motion for arrest of judgment is reversed and the cause remanded, with instructions to the trial court to vacate that order and rule upon respondent's motion for new trial.

ALL CONCUR.

[1]Reported in 113 P. (2d) 549.