211 P.2d 142

**STATE v. AYRES.**

No. 7507.

Supreme Court of Idaho.

Nov. 2, 1949.

Pete Leguineche, Boise, for appellant.

Robert E. Smylie, Atty. Gen., J. R. Smead, Asst. Atty. Gen., for respondent.

TAYLOR, Justice.

Appellant (defendant below) was convicted of involuntary manslaughter, upon a charge arising out of an automobile colli-

sion which occurred on May 2, 1948, on Highway No. 44, five miles west of Boise, in Ada County, Idaho. A resumé of the facts follows. All of the points mentioned are in Boise except the place of collision.

The defendant was the owner of a 1934 Chevrolet convertible coupé, with rumble seat, in which he, with his wife, on that day drove to his mother's home, arriving there at about noon. There they were served coffee and pie. They then drove to the home of Mr. and Mrs. Cole, arriving there about 1:00 or 1:30 P.M., where they visited and were served coffee and one bottle of beer. Accompanied by Mr. and Mrs. Cole, they then drove to the Merino Bar, where they were served soup, sandwiches and beer, the defendant himself having a bottle of orange pop. At this place they met one Arthur Trautman, who joined the party, and from there they drove to the Black Diamond (a beer parlor) to contact a "date" for Mr. Trautman. Mrs. Cole was perhaps the only one who entered this place at that time. The proposed "date" declining to accept, they drove to a residence where they met the witness, Joyce Newbold, who joined the party. A woman, who lived across the street, testified that, while they were parked in the driveway at the residence of Miss Newbold, she saw beer being passed around and heard some talk about drinking and heard a man's voice say that he had been drinking since morning. They then drove back to the Black Diamond, where they drank beer and danced. However, it appears probable that the defendant did not drink beer at this place. The group next drove to the Merino Bar and all went in except the defendant and his wife, who stayed outside until a little later he went in to ask the others to leave, upon which occasion he testified he had a glass of beer. The party then drove (defendant still driving) to "Bill's Place" (a combination of service station, restaurant and beer parlor) on Highway No. 44, five miles west of Boise. Here they had hamburgers and drank coffee and beer. Ayres testified that he had two drinks out of one bottle of beer, which he left unfinished. Mrs. Alta Williams, a daughter of the owner of the service station, who was there during all of the time that defendant's party was there, and who had known Trautman for a year, and on that occasion had visited with him at the station for about twenty minutes, testified that "Arthur was pretty much under the influence of liquor, of drink, I would say. He had had an awful lot to drink." As to Ayres, she testified, "Well, I think he had been drinking some, but not a lot."

This service station is located on the south side of Highway No. 44. The highway extends east and west and consists of two hard-surfaced strips of paving, each eighteen to twenty feet wide, and separated by a gravelled strip about six feet wide. Each of the hard-surfaced strips is divided by a yellow line down the center. So there are two lanes for the use of west bound

vehicles on the north side of the highway and two lanes for the use of east bound vehicles on the south.

After the group had been at the service station for some time and at about six o'clock P.M., the defendant and Arthur Trautman left and drove west on the highway (defendant at the wheel) for about two miles, then turned around and came east returning toward the station. A witness, Jean Lytle, a high school girl, who was visiting at the station in company with Tom Malson, a son of the operator of the station, testified that she, in company with Tom in Malson's car, was returning to the station from the west when defendant's car passed them, and while it was proceeding east ahead of them she observed that of the two men who occupied it, the one who was not driving was drinking beer from a bottle (the record shows that the top of the convertible was down at all times). Witness Lytle further testified that she and her escort then passed the convertible and then farther up the road, and when the Malson car was about to turn into the station, the convertible passed again, and the crash occurred. It was the state's theory that the defendant was driving his car at all times. In his defense, the defendant, himself, testified that he was driving when they left the station, and when they passed the Malson car on the way back, and until after the Malson car had passed defendant's car, and that then he slowed down to about five miles an hour and, while the car coasted, out of gear, he and Trautman changed places; Trautman, taking the wheel, drove the car on east and was driving when the collision occurred. He further testified that he took the car out on the highway on this particular occasion because Trautman was dealing with him for the purchase of the car and "wanted to try it out."

The collision occurred on the southernmost of the two lanes on the north side of the highway just about opposite the service station. Defendant's car had crossed the gravelled dividing strip in the center of the highway and collided headon with a Ford sedan, which was in the act of passing another car proceeding west, on the north side of the highway. The Ford sedan was being driven by its owner Edward Jantz, whose wife was sitting in the front seat with him and whose four daughters were in the back seat. The speed of the Jantz car was estimated at from forty to forty-five miles per hour, and of the defendant's car variously from thirty-five to fifty miles per hour. All of the occupants of the Jantz car were killed except one of the daughters. Trautman was killed and the defendant and the surviving Jantz girl were seriously injured. The collision occurred shortly after 6:00 P.M., probably at 6:20. At about 8:30 or 9:00 P.M. that same evening, while he was unconscious, blood was drawn from the arm of the defendant and analyzed by a pathologist, Dr. Joseph Beeman, who testi-

fied that the analysis showed 69 millimeters of alcohol from 100 c.c. of blood, which "would indicate that the man had been drinking but was not intoxicated; in other words, the level of alcohol in his blood is such that he had been drinking some but he wasn't drunk or intoxicated." The doctor further testified that in the absence of the absorption of additional alcohol from the stomach it takes from eight to twelve hours for the body to completely eliminate alcohol from the blood. The admission of this testimony over defendant's objection, was not a violation of his constitutional privilege against self-incrimination. U. S. Const.Amend 5; Const.Idaho, Art 1, sec. 13; People v. Tucker, 88 Cal.App.2d 333, 198 P.2d 941; State v. Cram, 176 Or. 577, 160 P.2d 283, 164 A.L.R. 952, note 967. Moreover, the testimony was favorable to the accused.

The charge as set forth in the information is as follows: "That the said defendant, Chesney Ayres, on or about the 2nd day of May, 1948, in the County of Ada, State of Idaho, and while engaged and occupied in running, driving and operating a motor vehicle on a public highway within the County of Ada, State of Idaho, to-wit, on State Highway Number 44, approximately five miles west of Boise, Ada County, Idaho, did wilfully, unlawfully, and feloniously drive and operate said motor vehicle negligently, carelessly and without due caution and circumspection by then and there driving said motor vehicle at an excessive rate of speed, upon the wrong side and across the center line of said State Highway Number 44 and while under the influence of intoxicating liquor and in such a manner as to endanger the lives and limbs of persons passing upon said highway; that while said defendant was so driving and operating said automobile at said time and place, in the manner aforesaid, the defendant then and there, unlawfully, wilfully, and feloniously drove said motor vehicle into and against the front end of a motor vehicle driven by one Edward Jantz upon said State Highway Number 44; that as a direct result thereof, Edward Jantz, Mrs. Edward Jantz, Marie Jantz, Helen Jantz, Pauline Jantz, occupants of said motor vehicle driven by the said Edward Jantz, and Arthur Trautman a passenger in said automobile driven by the said defendant, then and there received mortal wounds and injuries, from the effect of which the said Edward Jantz, Mrs. Edward Jantz, Marie Jantz, Helen Jantz, Pauline Jantz and Arthur Trautman, died, and so the said Chesney Ayres, did in the manner and form aforesaid, wilfully, unlawfully, and feloniously, but without malice, kill the said Edward Jantz, Mrs. Edward Jantz, Marie Jantz, Helen Jantz, Pauline Jantz and Arthur Trautman, and commit the crime of involuntary manslaughter."

The information complies with the requirements of the Code. I.C. secs. 19-1303, 19-1409, 19-1411, 19-1418, 19-1419;

State v. Singh, 34 Idaho 742, 203 P. 1064; State v. Bowman, 40 Idaho 470, 235 P. 577; State v. Calkins, 63 Idaho 314, 120 P.2d 253. It charges but one offense. I.C. 19-1413. State v. Brown, 36 Idaho 272, 211 P. 60; State v. Brooks, 49 Idaho 404, 288 P. 894; State v. McDermott, 52 Idaho 602, 17 P.2d 343; State v. Monteith, 53 Idaho 30, 20 P.2d 1023; State v. Goldizen, 58 Idaho 532, 76 P.2d 278; State v. Salhus, 68 Idaho 75, 189 P.2d 372. It is sufficient to put the defendant upon trial on either the theory that he was a principal, or that he was an accessory. I.C. secs. 18-204, 19-1430; State v. Cramer, 20 Idaho 639, 119 P. 30; State v. Curtis, 30 Idaho 537, 165 P. 999; State v. Bull, 47 Idaho 336, 276 P. 528; State v. Fox, 52 Idaho 474; 16 P.2d 663.

■ The defendant moved to quash the information on the grounds of irregularities in the preliminary proceedings and that the evidence before the magistrate was insufficient. We have examined the record and find a substantial compliance with the law and no prejudicial irregularities. State v. Clark, 4 Idaho 7, 35 P. 710. The sufficiency of the evidence was not before the trial court on this motion. State v. Foell, 37 Idaho 722, 217 P. 608; State v. Miller, 52 Idaho 33, 10 P.2d 955; State v. Hunt, 57 Idaho 122, 62 P.2d 1372.

■ The information was not read, or the defendant's plea stated, to the jury at the opening of the trial, but this was done, over the objection of the defendant, after the two first witnesses for the state had testified. No prejudice is indicated, and no error results. I.C. sec. 19-2101; People v. Ah Hop, 1 Idaho 698; State v. Chambers, 9 Idaho 673, 75 P. 274. The jury returned the following verdict:

"We, the Jury in the above entitled action, find the defendant, Chesney Ayres, guilty of Involuntary Manslaughter.

"H. A. Chase
"Foreman.

"Further that the jury by a unanimous ballot determined that Arthur Trautman was the driver of the death car.

"H. A. Chase
"Foreman."

■ This is a general verdict, I.C. sec. 19-2305, and is neither informal, I.C. sec. 19-2315, nor special, I.C. secs. 19-2306, 19-2314. State v. Schweitzer, 18 Idaho 609, 111 P. 130; Samlin v. United States, 9 Cir., 278 F. 170; Littlefield v. State, 22 Ga. App. 783, 97 S.E. 259; Russell v. State, 231 Ala. 297, 165 So. 255; State v. Thomas, 331 Mo. 299, 53 S.W.2d 266; People v. Collins, 195 Cal. 325, 233 P. 97.

A number of appellant's assignments of error are devoted to the proposition that by the complaint and information, and by the state's evidence, both at the preliminary and in chief at the trial, he was led to believe that the state would rely upon the theory that appellant was the driver of the car, that is, that he was the principal and not an accessory; that he did not know until

26

the state produced the testimony of Mrs. Williams on rebuttal (to the effect that Trautman was intoxicated) that the theory that he was an accessory would be advanced; and that he was thus prevented from having a fair trial. He asserts that Mrs. Williams' testimony was not rebuttal, but a part of the state's case in chief; that her name was not endorsed on the information; and that it was error to permit her to testify.

■ It is apparent from the record that the state pursued its theory, that appellant was driving the car, in good faith. The physical facts existing at the scene of the crime immediately after the collision suggested quite strongly that appellant was driving. He was thrown to the pavement forward of, and to the left of, his car, while Trautman's body was draped over the cowl to the right of the steering wheel. The state was able to produce no witness as to who was driving immediately before the crash. While there was some testimony of drinking by Trautman during the afternoon, evidence, such as given by Mrs. Williams, did not become material until the defendant testified that Trautman was driving. Then for the first time the state learned what the defense was, and had an opportunity to meet it. The testimony was clearly rebuttal, and properly admitted. I. C. secs. 19-2101, 19-2102, 19-1302; State v. Waln, 14 Idaho 1, 80 P. 221; State v. Mushrow, 32 Idaho 562, 185 P. 1075; State v. Wilson, 41 Idaho 616, 243 P. 359.

■ In support of his contention that there is a fatal variance between the allegations of the information and the proof, appellant cites State v. Gifford, 19 Wash. 464, 53 P. 709, which holds that one charged as a principal cannot be convicted upon evidence that he was an accessory. The Washington statute is similar to ours, but the decision is based upon a provision of the Washington constitution which we apparently do not have. Montana and Oregon having similar constitutional provisions have refused to follow the Gifford decision, State v. Geddes, 22 Mont. 68, 55 P. 919; State v. Branton, 33 Or. 533, 56 P. 267. Washington has had difficulty with the Gifford decision. State v. Druxman, 88 Wash. 424, 153 P. 381; State v. Baker, 150 Wash. 82, 272 P. 80; and finally evolved the rule that if the accused were personally present he may be charged as a principal although in fact an accessory. State v. Pielow, 141 Wash. 302, 251 P. 586; State v. Hopkins, 147 Wash. 198, 265 P. 481, 59 A.L.R. 688; State v. Nichols, 148 Wash. 412, 269 P. 337. In state v. Cooper, 26 Wash.2d 405, 174 P.2d 545, 550, that court held: "Every person implicated in the commission of a felony as an accessory is a principal and is to be proceeded against as such. The prosecuting attorney, in drawing up an information is not bound to elect between charging a defendant as a principal or as an accessory before the fact. Under the terms of the statute he may ask for a verdict of guilty if the evidence is suffi-

cient to satisfy the jury upon either theory. People v. Latona, 2 Cal.2d 714, 43 P.2d 260. He may charge all defendants as principals and, except in an unusual situation such as that presented in State v. Gifford, supra, the defendants are thereby sufficiently put upon notice as to the nature of the charge. Hence, under an information charging two or more defendants as principals, instructions as to aiding and abetting are proper." Arizona holds a statute, similar to our I.C. 19-1430, constitutional and that proof that defendant was an accessory will sustain allegations of an information charging him as a principal. Hunter v. State, 47 Ariz. 244, 55 P.2d 310.

Appellant also relies upon State v. Mc-Mahan, 57 Idaho 240, 65 P.2d 156, 159. The appellant in that case was charged with manslaughter in general terms, no particulars being alleged, and the information was held insufficient:

"* * * At the trial in the district court the prosecution offered evidence tending to show an abortion had been performed which resulted in the death of the deceased, but it was entirely insufficient to sustain a conviction based on that theory, if one had been secured. Testimony, by and on behalf of appellant, showed he treated the woman for general peritonitis from which disease she died. On rebuttal the prosecution produced evidence showing negligence and lack of skill in the treatment prescribed and administered by appellant, and the trial resulted in a verdict that he was guilty of involuntary manslaughter 'on the ground that he committed an act that might produce death and did so without due caution and circumspection.'

"* * * * * *

"It was not until during the trial that appellant or his counsel were in any manner informed that he was brought before the bar of justice to answer for a homicide committed through negligence and carelessness. He was entitled to know, before being required to plead to the information, the nature of the charge against him, and it would have told him that had it been drawn in conformity to the plain mandates of the statute. Had it so informed him, he would have been in position to prepare his defense. Without knowledge as to the nature of the charge upon which he was to be tried, he could not do so."

It is at once apparent that the McMahan case is not in point here. In the first place the particular acts and means by which the offense was committed are fully set out in the information in this case. Secondly, there was no question of principal and accessory in the McMahan case, and hence, the statute, sec. 19-1430, I.C., was not applicable to that case. The rule in the McMahan case could not be applied to the case at bar without nullifying the statute. Here he was fully advised of the acts he was charged to have committed, and he is presumed to know that he would be a principal and guilty as such whether he directly committed the acts

**28**

charged or aided and abetted in their commission by another.

 The foregoing disposes of appellant's objections to instructions covering the law of principal and accessory. The principal objection urged to the other instructions is to the effect that the charge would warrant a conviction based upon evidence sufficient to establish only ordinary negligence. Such criticism may be urged against two of the instructions given. These are set out in the footnotes in State v. Salhus, 68 Idaho 75, at pages 89 and 90, 189 P.2d 372. While not expressly approved in that case, it was in effect held that the giving of such instructions was not reversible error. It is to be noted that the legislature in defining excusable homicide uses the words, "usual and ordinary caution." I.C. sec. 18-4012. It is the province of the legislature to define crimes and the limitations thereof, and the use of legislative terms in instructions is not error. State v. Salhus, supra. Taken as a whole the instructions given correctly state the law. State v. Curtis, 30 Idaho 537, 165 P. 999.

We have examined appellant's requested instructions. They are either not applicable, or are covered by instructions given.

The evidence was amply sufficient to sustain the verdict. State v. Brooks, 49 Idaho 404, 288 P. 894; State v. Monteith, 53 Idaho 30, 20 P.2d 1023; State v. Hopkins, supra; Commonwealth v. Sherman, 191 Mass. 439, 78 N.E. 98; State v. Salhus, supra. The judgment is affirmed.

HOLDEN, C. J., and GIVENS, PORTER and KEETON, JJ., concur.