711 P.2d 741

STATE of Idaho, Plaintiff-Respondent,

v.

William Ray WHEELER,
Defendant-Appellant.

No. 15771.

Court of Appeals of Idaho.

Dec. 13, 1985.

Rehearing Denied Jan. 24, 1986.

796

John C. Lynn, Lynn, Scott & Hackney, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. René Fitzpatrick, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

William Ray Wheeler was convicted by a jury of second degree murder and received an indeterminate life sentence. On appeal, Wheeler raises three issues. First, Wheeler argues that the trial court erred in giving to the jury instructions on aiding and abetting, since the state's theory of prosecution alleged that Wheeler committed the murder. Second, Wheeler asserts that the court improperly limited cross-examination of a prosecution witness. Third, Wheeler challenges the length of his sentence. We affirm.

Wheeler was charged with first degree murder, I.C. § 18–4001, and with the use of a firearm in the commission of murder, I.C. § 19–2520, for the shotgun slaying of Bobby Wright. The information alleged that Wheeler actually shot and killed Wright, and the state prosecuted Wheeler on that theory. The prosecutor presented evidence that both Wheeler and Bob Paul, the state's chief witness, were present during the killing. Paul testified that Wheeler shot Wright. Wheeler, who elected not to testify, presented evidence through other witnesses and by cross-examination of Paul indicating that perhaps Bob Paul was the actual murderer. The judge, after the defense had rested its case, gave jury instructions allowing the jury to find Wheeler guilty of aiding and abetting the murder. The jury returned a verdict of guilty of second degree murder. The jury also returned a verdict of not guilty of using a firearm in the commission of a crime, a verdict admittedly in contradiction of the state's theory that Wheeler did the shooting. The judge imposed an indeterminate life sentence for the second degree murder conviction. We address each of Wheeler's issues in turn.

I

Wheeler urges that he was denied due process because he was not given notice that he could be found guilty of aiding and abetting, the theory under which he was apparently convicted. Wheeler argues that he based his defense on the lack of credibility of the state's chief witness. Therefore, Wheeler asserts, he elected not to testify and relied on a presumption of innocence. By giving the aiding and abetting instructions, the court, according to Wheeler, allowed him to be convicted under an alternative theory against which he had no reason to defend.

Several points of law are pertinent to Wheeler's argument. Idaho Code § 19–1430 abolishes any distinction between principals and accessories. *State v. So,* 71 Idaho 324, 231 P.2d 734 (1951). All parties involved in the commission of a crime are principals and no reference to a defendant as an accessory is required. *Id.* If an accused is fully advised of the acts he is charged with committing, "he is presumed to know that he would be a principal and guilty as such whether he directly committed the acts charged or aided and abetted in their commission by another." *State v.*

*Ayres,* 70 Idaho 18, 27–28, 211 P.2d 142, 147 (1949). In *Ayres,* the defendant was charged with manslaughter resulting from a car wreck in which several people were killed. Ayres testified that he was not driving at the time of the accident, having turned control of his car to a companion who had been drinking. The jury convicted Ayres of manslaughter. On appeal, the Idaho Supreme Court pointed out that Ayres was fully advised of the acts he had been charged with committing and that he would be guilty whether he committed those acts or was merely an accessory. Wheeler, in the present case, points out that in *Ayres,* the defendant was able to testify that he was not driving. The other party with Ayres in the car, who Ayres said was driving, was killed and could not be charged. In the present case the state's chief witness was not charged with the murder even though he was present during the killing.

In addition to Paul's testimony, another witness, Howard, testified that he was with Wheeler and Paul in Wheeler's car the evening of the shooting. Howard related that the three of them had decided to go to Bobby Wright's house to obtain some illicit drugs from Wright. On the way to Wright's house, Wheeler commented, "let's go kill Bobby." A shotgun belonging to Wheeler was in the car. Howard testified that when they arrived at the victim's house, Wheeler removed the shotgun and carried it with him as he and Paul entered the house. Howard remained in the car. He said he "heard what I thought was a door slamming." Wheeler and Paul then came out of the house. Wheeler was still carrying his shotgun. Wheeler and Howard then returned to the house and went inside where Wheeler picked up a spent shotgun shell. Howard observed Bob Wright lying on a couch. They returned to the car and left the scene.

Later that night Bob Paul reported the shooting to the police, identifying Wheeler as the murderer. The next morning Wheeler was observed at his place of employment cleaning his shotgun in a "degreasing" machine. After the gun was cleaned he placed it in the trunk of his car. Subsequently, the same morning, the shotgun was seized by the police under a search warrant. The shotgun was admitted in evidence at Wheeler's trial.

Although Wheeler did not testify that the witness, Paul, did the shooting, Wheeler's defense counsel attempted to establish throughout the trial that it was Paul who actually committed the crime. Thus the theory that he was an accessory to the crime should have been no surprise to Wheeler.[1] A defendant is not required to take the stand in his own behalf. Whether to do so is the defendant's choice, a choice often made for tactical reasons. Regardless of whether the defendant testifies, however, the presumption of innocence remains. The court is required to instruct the jury as to all matters of law necessary for their deliberation. I.C. § 19–2132. Here the trial judge indicated that there was sufficient evidence from which a theory of aiding and abetting could be derived even if the jury determined that Bob Paul did the shooting. Particularly, the court noted: "There is evidence of encouragement. There is evidence of the provision of a weapon, and there is evidence that can be read as even participating in a cover-up, . . . ." Our review of the record supports that determination by the trial judge. The aiding and abetting instructions were consistent with the evidence presented at trial.

Wheeler cites the case of *State v. McMahan,* 57 Idaho 240, 65 P.2d 156 (1937) as paralleling the situation here. We do not agree. In *McMahan,* the defendant was a physician who was charged with manslaughter when a patient died following an

---

1. Defense counsel at one point even argued that Paul was an accomplice. This argument was made to the court, not to the jury, on Wheeler's motion for judgment of acquittal. Defense counsel contended that Paul was an accomplice, that Paul's testimony was uncorroborated, and that under I.C. § 19–2117 a conviction could not be had on the testimony of an accomplice unless such testimony was corroborated by other evidence. The trial court ruled that Paul's testimony had been corroborated, and denied Wheeler's motion.

abortion operation by the doctor. The information charged the doctor only with manslaughter in general and did not state the specific acts of which he was accused. At trial the state's evidence in chief was insufficient to sustain the charge of causing death as a result of the operation. The prosecution, on rebuttal, then introduced evidence of negligence and lack of skill in treatment of a disease, peritonitis, which developed as a result of the operation. On appeal, the doctor's conviction was reversed. Our Supreme Court held that it was unconstitutional to force the accused to plead to an information without knowing "the nature of the charge against him." The court stated that "[i]t was not until during the trial that appellant or his counsel were in any manner informed that he was brought before the bar of justice to answer for a homicide committed through negligence and carelessness." *Id.* at 249, 65 P.2d at 159. *McMahan* did not involve an aiding and abetting issue. In *State v. Ayres, supra,* the appellant also cited the holding of *McMahan* for support. The *Ayres* court dismissed the theory as being inapplicable and pointed out that applying *McMahan* to the *Ayres* case would nullify the provisions of I.C. § 19–1430, which abolishes the distinction between principals and accessories. A similar result would arise here from such an application. The evidence at trial fully supported Wheeler's guilt under an accomplice theory. The trial judge, in addressing Wheeler's objection to the aiding and abetting instructions, stated: "A defendant is entitled to have the law applied. He is not entitled to have a portion of unfavorable law suppressed." We hold that the trial judge did not err in giving the aiding and abetting instructions to the jury.

## II

■■■ Wheeler's next issue concerns the trial judge's limitation of cross-examination of a police officer testifying for the prosecution. The officer had testified that he told Bob Paul not to confer about the case with other people because the officer did not want the case discussed with anyone except law enforcement officials or the prosecuting attorney's office. The defense, on cross-examination, attempted to elicit from the officer testimony that his true motive was to prevent disclosure of Paul's having failed polygraph tests. The defense's theory was that certain inconsistencies in Paul's statements resulted from police accusations that the polygraph tests showed Paul was lying to the authorities. Wheeler urged that disclosure of Paul's failure of the polygraph tests would support Wheeler's contention that Paul had shot the victim. On appeal, Wheeler asserts that revealing the officer's true motive for preventing Paul from discussing the case was a proper area of impeachment and should have been permitted.

The control of cross-examination is committed to the discretion of the trial judge. *State v. Pierce,* 107 Idaho 96, 685 P.2d 837 (Ct.App.1984). Rulings on limiting cross-examination will not be disturbed absent a showing of prejudice. *Id.* No prejudice has been shown on this appeal. Our review of the record discloses that the trial judge was properly concerned that inadmissible evidence of the polygraph tests would be introduced. *See, e.g., State v. Boothe,* 103 Idaho 187, 646 P.2d 429 (Ct.App.1982). The judge ruled that impeaching the officer as to his motives for cautioning Paul did not justify allowing evidence of the polygraph tests to come in. The transcripts of the trial show that the trial judge, without permitting introduction of potentially prejudicial polygraph information, gave the defense considerable latitude in its attempt to establish that Paul had changed his statements because of police accusations that he was lying. The defense was able to point out the inconsistencies in Paul's statement and establish that the police had accused him of lying. No prejudice having been shown, the trial court is affirmed as to this issue.

## III

■■■ Wheeler's third issue on appeal concerns the length of his sentence. Wheeler received an indeterminate life sen-

tence. He could have received a fixed life sentence, the maximum penalty allowed for second degree murder. I.C. § 18–4004.

The trial court possesses discretionary authority to determine an appropriate sentence. A sentence within the statutory maximum will not be disturbed on appeal absent a clear abuse of sentencing discretion. *State v. Delin,* 102 Idaho 151, 627 P.2d 330 (1981). In *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we stated that a period of confinement under a sentence is reviewed to determine if it is reasonable. A period of confinement is reasonable if it is necessary, at the time of sentencing, to achieve "the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution." *State v. Toohill* 103 Idaho at 568, 650 P.2d at 710. For an indeterminate life sentence, ten years is the term of confinement to be considered. *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983). When weighing the facts of a given case, we conduct an independent examination of the record. We focus upon the nature of the offense and the character of the offender. *State v. Adams,* 106 Idaho 309, 678 P.2d 101 (Ct.App.1984). As noted, the crime here involved the shotgun slaying of an acquaintance of Wheeler's. The victim was lying on a couch, apparently asleep, when he was shot in the head with a twelve-guage shotgun. Wheeler denied that he shot the victim. While albeit the jury may have questioned whether Wheeler did the actual shooting, they convicted him of second degree murder.

As to his character, Wheeler's presentence report indicated one previous felony conviction for assault with a deadly weapon involving the attempted shooting of a police officer in California, and three misdemeanor convictions. Wheeler prior to his arrest had a stable job and family life. His wife and other family members apparently offered substantial support to Wheeler during his trial. The presentence report indicated that Wheeler did have serious problems with alcohol abuse and that, although he appeared to be stable, he was considered to be a very dangerous person whose violent behavior could be triggered by a single drink. The trial judge acknowledged these factors at the sentencing hearing. The record reflects that the judge heard substantial testimony at the hearing and duly considered all the objectives of sentencing. The judge noted that while rehabilitation may occur, it would take a long time, and those authorities who would evaluate Wheeler's rehabilitation should have the maximum period in which to base that evaluation. We find no evidence of any abuse of sentencing discretion.

The judgment of conviction and sentence are affirmed.

BURNETT and SWANSTROM, JJ., concur.