HORTON, J.,
concurring in part and dissenting in part.
I join in Chief Justice Burdick’s dissent from Part III.A2 of the Court’s opinion. I also dissent from Part III.C.2. Although I would vacate Adamcik’s sentence for first degree murder, I agree with the reasoning advanced in the remainder of the Court’s opinion.
I will approach the two sections of the opinion from which I dissent in a different sequence than did the majority. I do so because the issue of the sufficiency of the evidence presented at trial to support the verdict is defined by the question presented to the jury for its determination. My disagreement with the majority flows from my conviction that this Court may not evaluate the sufficiency of the evidence presented at trial on a theory upon which the jury was not instructed.
The majority’s opinion does not contain an explicit statement of the premises upon which it rests. A careful reading of the majority’s decision regarding the sufficiency of the evidence and the discussion relating to J.I. 10 and J.I. 12 reveals that the decision ultimately rests upon the following premises: (1) a jury need not be “expressly” instructed as to the law of principal liability based upon a theory of aiding and abetting another in the commission of a crime; and (2) this Court may disregard the instructions that the jury was provided which articulate the theory upon which the defendant was charged and view the sufficiency of the evidence as to a theory upon which the defendant may have been charged and for which jury instructions would have been appropriate. In accepting these premises, I believe that the majority has overstepped its appellate role and assumed the duties of the trier of fact. For that reason, I believe that my fellow dissenter has properly quoted Justice White’s statement in McCormick v. United States, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991):
This Court has never held that the right to a jury trial is satisfied when an appellate court retries a ease on appeal under different instructions and on a different theory than was ever presented to the jury. Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.
Id. at 270 n. 8, 111 S.Ct. at 1815 n. 8, 114 L.Ed.2d at 324 n. 8.
Part III.C.2
I agree with the proposition advanced by the majority that a prosecutor’s information does not have to allege that a defendant aided and abetted another in the commission of a crime. Indeed, this is a proposition that this Court has consistently accepted for more than sixty years, beginning with the decision in State v. Ayres, 70 Idaho 18, 27-28, 211 P.2d 142, 147 (1949) (“he is presumed to know that he would be a principal and guilty as such whether he directly committed the acts charged or aided and abetted in the commission by another”) through our most recent decision on the subject in State v. Shackelford, 150 Idaho 355, 377-79, 247 P.3d 582, 605-06 (2010) (rejecting defendant’s claim of error in giving aiding abetting instruction due to absence of allegation in indictment that defendant aided and abetted another).
However, I do not view the critical issue presented in this appeal (at least as it relates to the conviction for first degree murder) as whether Adameik’s due process rights were implicated. Rather, the related questions are (1) What charge did the jury receive? and (2) Does the majority’s holding violate Adam-eik’s right to trial by jury?
The majority concludes Part III.C.2 with the following statement:
Certainly, the jury in this case understood the State’s theory that Adamcik and Draper acted in concert to murder Stod-dart: that Adamcik planned the murder; that he lay in wait with Draper to help carry out the murder; and that he inflicted *492 at least one stab wound that could have killed Stoddart. These theories of first-degree murder are adequately described in the jury instruction provided in this case by requiring that the jury find that Adam-eik engaged in conduct which caused Stod-dart’s death.
I do not agree that the instructions may reasonably be interpreted as instructing the jury as to the State’s theory that “Adamcik planned the murder; that he lay in wait with Draper to help carry out the murder; and that he inflicted at least one stab wound that could have killed Stoddart.” Rather, as the majority recognizes, “[t]he only conduct that the jury was instructed on regarding first-degree murder” is found in J.I. 10, which set forth the charging language of the information.
J.I. 10 alleged that Adamcik murdered Stoddart “by purchasing knives and stabbing Cassie Stoddart from which the victim died in Bannock County, Idaho.” I agree with the majority’s conclusion that the reference to “purchasing knives” is mere surplusage. Thus, the only theory of murder upon which the jury was instructed is that Adamcik engaged in the conduct of “stabbing Cassie Stoddart from which the victim died.” Although the jury undoubtedly understood that the State’s evidence showed that “Adamcik planned the murder; that he lay in wait with Draper to help carry out the murder; and that he inflicted at least one stab wound that could have killed Stoddart,” the jury was simply not instructed on these theories of liability.
The charge of first degree murder set forth in the Information did not allege that Adamcik planned the murder, nor did it allege that he lay in wait with Draper to help carry out the murder, nor did it allege that Adamcik inflicted at least one stab wound that could have killed Stoddart. Rather, the State elected to charge Adamcik as the person who slayed Cassie Jo Stoddart, alleging that he murdered Stoddart by “stabbing Cassie Stoddart from which the victim died.”[13] The instructions given by the district court reflected the theory upon which the State elected to charge Adamick with first degree murder. For that reason, I am deeply troubled by the majority’s certainty that “the jury in this case understood the State’s theory that Adamcik and Draper acted in concert in the commission of this murder.... ” Although the jury may well have intuited that one who participates in a killing may be accountable for that act, it is undisputed that the district court did not instruct them as to the law governing the principal liability of an aider-and-abettor. The majority’s statement appears to disregard this Court’s oft-stated presumption that a jury follows the instructions they have received. See e.g. Phillips v. Erhart, 151 Idaho 100, 109, 254 P.3d 1, 10 (2011). Instead, the majority appears to presume that the jury disregarded the instructions they were given in order to reach “the right result” based upon the evidence presented at trial.
The majority, when discussing the adequacy of the jury instructions, states: “[A]s discussed at length in Part III.A.2, the State need not prove Adamcik inflicted the fatal wound, or any wound, so long as it proved he was an accomplice in Stoddart’s killing.” This statement ignores the fact that the only “conduct which caused the death of Cassie Jo Stoddart” which was the subject of instruction is that contained in the Information.
Although the majority relies on Ayres and State v. Owen, 73 Idaho 394, 253 P.2d 203 (1953), in its discussion of the sufficiency of the evidence that Adamcik aided and abetted in Stoddart’s killing (which is incorporated into its analysis of the jury instructions in Part III.C.2), neither of these eases stands as *493 precedent for the proposition that the jury charge need not articulate the grounds upon which a defendant may be found liable as a principal for the criminal acts of another.
In Ayres, this Court upheld a conviction for involuntary manslaughter in a ease where the jury found that another, Arthur Traut-man, was the driver at the time of a head-on collision which killed five people, including Trautman. This Court found that sufficient evidence supported the defendant’s conviction as a principal on a theory of aiding and abetting, 70 Idaho at 27-28, 211 P.2d at 147, although the information charged that Ayres “did wilfully, unlawfully, and feloniously drive and operate said motor vehicle_” Id. at 24, 211 P.2d at 144-45. However, it is significant that the jury was explicitly charged in the jury instructions as to the legal theory upon which Ayres could be found guilty of the charge, even if he were not the driver.[14]
In Oiven, two defendants (Owen and Hastings) appealed their convictions and sentences for first degree murder, arising from the shooting death of Bert McCurry, the owner and operator of a grocery store, in the course of a robbery. 73 Idaho at 400, 253 P.2d at 205-06. The majority quotes a small portion of the Owen decision and concludes that “Defendants acting in concert are thus equally guilty of the crime charged.” The majority fails to note that the jury was specifically instructed that principals to a robbery are equally responsible for a killing committed in the course of the robbery, irrespective of which participant in the robbery actually committed the killing.[15]
Nor do I find the support the majority perceives in State v. Butcher, 137 Idaho 125, 44 P.3d 1180 (Ct.App.2002). Although I agree with the majority that the rule pronounced by the Court of Appeals in that ease is sound, it simply has no application to this case. In Butcher, the district court instructed the jury as to the law of principal liability as an aider-and-abettor. This did not happen in this case, as the majority properly recognizes.
For these reasons, I do not subscribe to the majority’s view that the sufficiency of the *494 evidence should be judged to determine whether substantial, competent evidence exists to support a finding that Adamcik engaged in conduct that caused Stoddart’s death by aiding and abetting Draper in killing Stoddart. Consistent with Justice White’s statement in McCormick, I believe that the majority’s decision usurps the role of the jury and deprives Adamcik of his right to a jury trial, guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 7 of the Idaho Constitution.
Accordingly, I believe that the sole inquiry is that demanded by the district court’s instructions: did the State produce sufficient evidence to permit the jury to conclude beyond a reasonable doubt that Adamcik stabbed Stoddart, causing her death?[16] This leads me to Part III.A. of the Court’s decision.
Part III.A.
I join in Chief Justice Burdick’s dissent, as I do not believe that the State produced sufficient evidence to support a finding that Adamcik personally inflicted the stab wound that killed Stoddart. I would have no hesitation whatsoever in upholding a conviction if the jury had been instructed on a principal theory of criminal liability for aiding and abetting the slaying, However, I do not view myself as being free to weigh the evidence and determine that Adamcik is guilty of Stoddart’s murder on a theory not presented to the jury by way of instruction. That determination could only have been made by a properly instructed jury. As jeopardy has attached, the conviction cannot be vacated and the matter remanded for new trial. If my premise is correct that there was insufficient evidence produced at trial to support a finding that Adamcik inflicted a fatal stab wound, this Court can only reverse the conviction. For that reason, I respectfully dissent from the Court’s opinion affirming Adamcik’s conviction and sentence for first degree murder.

. The State's election to charge Adamcik as the individual who stabbed Stoddart to death is inexplicable, inasmuch as the State had previously persuaded a jury beyond a reasonable doubt that Brian Draper murdered Stoddart by "stabbing Cassie Stoddart from which the victim died.” (Although it is not part of the record in this appeal, before Adamcik’s trial, Brian Draper was convicted of first degree murder for his role in Stoddart’s slaying. The language in the information setting forth the charge of first degree murder in that case was identical to that used in this case, save for the identity of Stoddart’s alleged killer.) I take it as a given that a person may be murdered only one time. Thus, I am utterly baffled by the State’s decision not to request an instruction relating to Adamcik’s liability as a principal for aiding and abetting Draper in the commission of the murder.

. A review of the record in the Ayres case reveals that the jury received the following instruction:
Secondly, I instruct you that if the owner of a dangerous instrumentality like an automobile knowingly puts that instrumentality into the immediate control of a careless and reckless driver, and sits by his side, without protesting, while such driver violates a statute or statutes [sic] governing the driving of automobiles on the highways of this state, such owner is equally responsible with the driver if the latter's violation of the law is the cause of the death of another.
Therefore, if in this case you find from the evidence that Trautman at and just prior to the collision of the two automobiles herein involved, was the driver of the defendant's automobile, and that, whether you find that said Trautman was or was not under the influence of intoxicating liquor, but you are convinced beyond a reasonable doubt that he drove said automobile at an excessive rate of speed and in such manner as to endanger the life and limb of any person upon said highway, or that he drove the same upon the wrong side of the said highway at a time and place when and where he was not confronted by any necessity for driving on such wrong side of the highway in order to avoid a sudden emergency, as by me explained in Instruction No. 11, herein, then, in such case, the defendant is guilty equally with the said Trautman of the violation of the law, and if such violation of law was the proximate cause of the death of the persons in the [other] car, the defendant is guilty of involuntary manslaughter, and you should so find by your verdict.

. Instruction No. 20 charged the Owen jury as follows:
All persons concerned in the commission or attempted commission of a robbery, whether they directly commit the act constituting the offense or aid and abet in its commission, are equally guilty of all acts done by any of them in furtherance of the criminal offense.
If you find from the evidence in this case that the defendants, acting together an in concern and with the common design and purpose, went to the store of Bert McCurry to rob him and in attempting to accomplish such robbery one of the defendants shot and killed the said Bert McCurry with a pistol, then each defendant is equally guilty of said killing, even though such homicide was not the result intended or within the contemplation of the parties as part of their original design.
This charge is consistent with the allegation that Owen and Hastings acted in concert in the killing. The information alleged, in pertinent part, as follows:
And that the said defendants, William Lawrence Owen and Kenneth Raymond Hastings, did wilfully, unlawfully, knowingly and felo-niously aid, encourage, propose, advise, counsel and abet each other in the unlawful commission of said crime.

. I have also considered the possibility that the omission of an aiding and abetting instruction was harmless error under the holding in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In Neder, the Supreme Court stated: "Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.” Id. at 9, 119 S.Ct. at 1833, 144 L.Ed.2d at 47 (emphasis original). The court concluded that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.” Id. at 17, 119 S.Ct. at 1837, 144 L.Ed.2d at 52.
In my view, this case is not like Neder, in which there was an element of the offense which was uncontroverted and unchallenged. To the contrary, the defense focused on the charge which had been made and upon which the jury had been instructed, and argued for an acquittal based upon the absence of evidence that Adam-cik directly participated in the killing. In closing argument, Adamcik’s attorney stated:
Some of these instructions can get a little bit confusing, but this is what it says — this is what the State must prove. They have to prove the charge. And look under Count I, Murder in the First Degree, that the said Torey Michael Adamcik, in the County of Bannock, State of Idaho, on or between the 22nd, 23rd days of September, 2006, did willfully, unlawfully, deliberately, and with premeditation, malice — ■ and aforethought, kill and murder Cassie Stod-dart, a human being, by purchasing knives and stabbing Cassie Stoddart, from which the victim died in Bannock County, Idaho.
Did they prove that? Did Dr. Skoumal establish that Torey Adamcik put a knife in Cassie Stoddart? They have to prove that or they have not met their burden.
Defense counsel then returned to the lack of physical evidence to support the charge that Adamcik actually killed Stoddart:
What happens is you see the videotape and you start assuming stuff. You start assuming that is the end of the story — but it’s not. And it’s real hard to believe, isn’t it, it’s hard to believe — that that Cassie is dead — that he didn't do it. But all of the physical evidence proves that he didn’t do it.
There is not one single piece of evidence that ties Torey Adamcik to ever touching Cassie Stoddart. Not one. Not one. Out of all the things they have.
Given the defense focus on the charging language contained in the information, and the absence of evidence to support the charge, I cannot conclude that the omission of an aiding and abetting instruction was harmless.